

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JODI LYNN FOSTER WALKER,       )
                               )
            Plaintiff,         )
                               )
   vs.                         )          06 C 4901
                               )
THE NORTHERN TRUST COMPANY,    )
TRUSTEE; PHYLLIS L. FOSTER,    )
LAWRENCE T. FOSTER, ROBERT C.  )
FOSTER, HENRY T. MATHER, JR.,  )
Individually and as Members of THE )
ADVISORY COMMITTEE OF THE      )
JAMES R. FOSTER TRUST FOB JODI )
LYNN FOSTER dated DECEMBER 26, 1978, )
and JAMES R. FOSTER,           )
                               )
            Defendants.        )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before this court are Defendant James Foster ("Foster")'s motion to dismiss for

lack of personal jurisdiction, Defendants Phyllis L. Foster, Lawrence T. Foster, Henry

T. Mather Jr., and Robert C. Foster (the "Advisory Committee Defendants")'s motion

to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Defendant the Northern Trust

Company ("Northern Trust")'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

For the following reasons, Foster's motion is granted in part and denied in part and the Northern Trust and the Advisory Committee Defendants' motions are denied.

## BACKGROUND

We take the operative facts from Foster Walker's complaint, which, at this stage in the litigation, we are required to presume are true. In 1978, Foster established a trust ("the Trust") for the benefit of his daughter, Plaintiff Jodi Lynn Foster Walker ("Foster Walker"), naming the Toledo Trust Company of Toledo, Ohio, as trustee. The Trust Agreement provided for an Advisory Committee charged with the authority to make distributions to Foster Walker and otherwise make discretionary decisions with respect to certain aspects of the administration of the Trust. Foster's brothers, Defendants Lawrence and Robert Foster, as well as Robert Foster's wife and Foster's sister-in-law Phyllis Foster, and Foster's close friend Henry Mather serve or served as members of the Advisory Committee ("Advisory Committee defendants"). In 1984, Northern Trust, a Chicago, Illinois company, replaced the Toledo Trust Company as trustee.

In this action, Foster Walker alleges that the Advisory Committee and Northern Trust, controlled and coerced by Foster, failed to act in her best interests by failing to make any distributions from the trust despite her requests for financial assistance to pay for her housing, her medical expenses, her education, and the care of her special needs son. Foster Walker also alleges that in 1985, Foster defrauded her into signing a

waiver of her right to withdraw the assets of the Trust (the "1985 Waiver") and transforming the trust into a grantor trust, which she alleges had negative tax consequences. In addition, Foster Walker alleges that Northern Trust cooperated with Foster in ensuring that she not be informed of the nature and consequences of the 1985 Waiver. Further, she asserts that Northern Trust failed to make both mandatory and discretionary income distributions to Foster Walker, that Northern Trust wrongfully used Trust funds to pay certain income taxes and to pay for tax preparation and trustee's fees, and that Northern Trust wrongfully paid its own attorneys' fees and the remaining defendants' attorneys' fees arising from the Delaware litigation from Trust funds. Foster Walker also states claims for conspiracy to convert trust funds, wrongful conversion of trust funds, and unjust enrichment on the part of Foster, Northern Trust and the Advisory Committee defendants. These actions, Foster Walker contends, were committed in bad faith, fraudulently, with reckless indifference, and were an abuse of discretion, such that they amounted to a breach of fiduciary duty by both Northern Trust and the Advisory Committee Defendants. She requests, as a consequence of Defendants' breaches of fiduciary duty, that the Advisory Committee defendants be removed as fiduciaries, that a constructive trust be created, and that an independent trustee and advisory committee be appointed.

In 2003, Foster Walker sued Foster, Northern Trust, and the Advisory Committee defendants in Delaware alleging breaches of fiduciary duty with respect to the Trust. *Walker v. Northern Trust Co.,* 2004 WL 1588287, *1 (D. Del. 2004). Foster Walker also sued Foster, the Advisory Committee defendants, and West Michigan National Bank and Trust Co. for breaches of fiduciary duty with respect to another trust established for her benefit in 1988. *Walker v. West Michigan Nat. Bank & Trust,* 324 F. Supp. 2d 529, 535 (D. Del. 2004). The district court dismissed the *West Michigan* litigation, holding that it had personal jurisdiction only over Foster, and that in any case, the claims were barred by the statute of limitations and laches. The district court judge presiding over the *Northern Trust* litigation dismissed that case, asserting that it had no jurisdiction over any of the defendants. The Third Circuit, in an unpublished opinion, affirmed both decisions. *Walker v. West Michigan Nat'l. Bank & Trust,* 145 Fed. Appx. 718, 721, 2005 WL 1901550, at *3 (3d Cir. 2005) (collectively, the "Delaware litigation"). The Third Circuit expressly stated that the dismissals in the *Northern Trust* litigation were without prejudice, as they were based on a lack of personal jurisdiction, not on the merits.

## DISCUSSION

Foster has filed a motion to dismiss based upon lack of personal jurisdiction, and both the Advisory Committee defendants and Northern Trust have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). We address each of these motions in turn.

- 4 -

## I.    Motion to Dismiss for Lack of Personal Jurisdiction

### A.    Legal Standard

Fed. R. Civ. P. 12(b)(2) governs motions to dismiss based upon lack of personal jurisdiction. Under this rule, the party asserting jurisdiction shoulders the burden of proof, but that party need only make a prima facie showing that jurisdiction exists. *See Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988). A court may receive affidavits to determine whether personal jurisdiction exists. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Once a defendant submits affidavits or other evidence to counter a plaintiff's assertion of jurisdiction, the burden shifts back to the plaintiff to submit affirmative evidence supporting jurisdiction. *Id.* at 782-83. However, the plaintiff is entitled to have all factual disputes arising from conflicts in the affidavits, and all undenied factual allegations, resolved in his or her favor. *Id.* at 782; *Saylor*, 836 F.2d at 342.

### B.    Discussion

In her complaint, Foster Walker state claims against Foster, a resident of Montana, as follows:

a) In Count IV, she alleges that Foster conspired and agreed with the Advisory Committee defendants (residents of Michigan and North Carolina) and Northern Trust (resident of Illinois) to pay excessive attorneys' fees from the Delaware litigation to Foster and the Advisory Committee;

b) In Count VIII, she alleges that Foster was unjustly enriched by accepting attorneys' fees paid on his behalf in the matter of *Foster Walker v. The Northern Trust Company*; and

c) In Count X, she alleges that Foster conspired with Northern Trust in a breach of its fiduciary duty and committed fraud when he coerced Foster Walker into signing a 1985 Waiver that resulted in her waiving her rights to withdraw assets from the Trust, and then prevented her from learning of the consequences of such a waiver.

Foster contends that none of the allegations of Foster Walker's complaint establish a basis for this court to exercise jurisdiction over him.

When a case is before a court on the basis of diversity jurisdiction, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant only if an Illinois state court would have jurisdiction. *See RAR Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). The Illinois long-arm statute authorizes jurisdiction over nonresident defendants upon any basis permitted by either the Illinois or federal constitutions. 735 ILCS 5/2-209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (noting that the permissible bases for jurisdiction under the Illinois long arm statute are not confined to those enumerated in 735 ILCS 5/2-209(a)). Accordingly, the traditional three-pronged inquiry into state statutory law, state constitutional law, and federal constitutional law collapses into two questions - whether exercise of personal jurisdiction would be permissible under Illinois or federal law. *See RAR, Inc.*, 107 F.3d at 1276. In Illinois, "jurisdiction is to be asserted only when

- 6 -

it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 565 N.E.2d 1302, 1316 (Ill. 1990). Because Illinois's fairness standard does not materially differ from the standard of "traditional notions of fair play and substantial justice" articulated in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and as the Seventh Circuit has suggested that there is little practical difference between the two standards, *RAR, Inc.,* 107 F.3d at 1276-1277, we will examine Foster's arguments with reference to the federal due process clause.

In order to exercise jurisdiction over a nonresident defendant, that defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (*quoting Int'l Shoe Co.,* 326 U.S. at 316). Personal jurisdiction can be exercised based upon two types of contacts with the forum state. First, a nonresident defendant can be subject to "specific jurisdiction" only if the suit arises out of or relates to his contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). Second, a nonresident defendant who has "continuous and systematic general business contacts" with the forum state can find himself subject to general jurisdiction, even if the cause of action alleged does not arise out of or relate to his

- 7 -

contacts with the state. *Id.* at 416. As Foster Walker does not allege that Foster had "continuous and systematic" contacts with Illinois sufficient to establish general jurisdiction, we examine whether or not Foster Walker has made a prima facie showing that Foster is subject to the specific jurisdiction of this Court.

Specific jurisdiction exists when a defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal citations omitted). To determine whether a defendant could be said to have purposefully established minimum contacts with the forum state, courts ask whether or not "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474. A defendant may not be subjected to jurisdiction on the basis of "random," "fortuitous," or "attenuated" contacts, or on account of "the unilateral activity of another party or a third person." *Id.* at 475. However, where a defendant has deliberately engaged in actions creating a substantial connection with the state or has created continuing obligations between himself and residents of the forum, "he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of

litigation in that forum as well." *Id.* at 475-76. Neither physical presence in the forum state nor more than a single act is required to establish specific jurisdiction. *Id.*

Foster Walker alleges that Foster conspired with the remaining Defendants to take actions amounting to breaches of fiduciary duty and that he was unjustly enriched. While allegations of conspiracy can be a basis for the exercise of personal jurisdiction, vague and conclusory allegations of such a conspiracy are not sufficient to establish jurisdiction. *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1392-93 (7th Cir.1983) (holding that jurisdiction may be asserted over a nonresident where plaintiff can allege "an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in Illinois"); *Cleary v. Philip Morris, Inc.*, 726 N.E.2d 770, 773(Ill. App. Ct. 2000). Instead, plaintiffs must make a *prima facie* showing of civil conspiracy. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F.Supp.2d 904, 912 (N.D. Ill. 1999) *Reserve Capital, LLC v. CLB Dynasty Trust*, 2006 WL 1037321, at *4 (N.D. Ill. 2006).

In support of the general allegations of conspiracy contained in her complaint, Foster Walker specifically alleges that Foster contacted Northern Trust in 1985 and coerced Northern Trust to send the notice of Waiver to Foster's home in Montana, rather than Foster Walker's home in Delaware. According to Foster Walker, James then sent only a portion of the 1985 Waiver to her in Delaware and coerced her into

- 9 -

signing it without true knowledge of its legal import. She also alleges that he directed Northern Trust to prepare her income tax returns, and that such an agreement demonstrates the existence of a conspiracy to deceive her as to the consequences of her signature on the 1985 Waiver.

Foster has submitted an affidavit in support of his motion to dismiss, in which he avers that: a) he is currently a resident of Nevada, and at the time the trust was created, was a resident of Montana; b) he has not resided in Illinois since the trust was created; c) he did not participate in any decision to pay attorneys' fees from the trust, nor did he communicate with any other defendants about any such decision; d) he never received payment from the Trust; and e) he did not send the 1985 Waiver to anyone in Illinois, nor does he recall any communications with anyone in Illinois concerning that letter. Foster Walker has not countered Foster's affidavit.

The only grounds for a finding that Foster had the requisite "minimum contacts" with Illinois which would permit the exercise of personal jurisdiction over him with respect to the allegations of conspiracy to pay attorneys' fees from the Trust, as well as for unjust enrichment based upon the receipt of such attorneys' fees, are Foster Walker's allegations that Foster communicated with Northern Trust concerning the payment of attorneys' fees. Foster has denied this allegation, and Foster Walker has offered no evidence to refute his denial. Accordingly, we find that Foster Walker has

- 10 -

not established a prima facie case for the exercise of personal jurisdiction over Foster with respect to a conspiracy to pay attorneys' fees out of the Trust in the Delaware litigation, as she has not established a substantial act in furtherance of that conspiracy. Furthermore, we find that she has not established sufficient minimum contacts to justify the assertion of jurisdiction over Foster with respect to her claim of unjust enrichment.

Taking all uncontested factual allegations as true, and construing all conflicting facts in favor of Foster Walker, we do find that she has established a prima facie case for conspiracy, and therefore grounds for the assertion of personal jurisdiction, with respect to the 1985 Waiver and the alleged conspiracy to keep her ignorant of the consequences of that waiver. Foster has not denied communicating with Northern Trust. Instead, he asserts that he "does not recall" communications with Northern Trust in 1985, and he has not denied ordering Northern Trust to prepare Foster Walker's tax returns. Foster Walker has adequately alleged the existence of a conspiracy and a substantial act in furtherance of that conspiracy, such as would justify our assertion of personal jurisdiction over Foster with respect to Count X of her complaint.

## II.     Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

## A.     Legal Standard

The purpose of a motion to dismiss is to test the legal sufficiency of a complaint, not to decide the merits. *Triad Assoc., Inc. v. Chicago Housing Authority*, 892 F.2d

583, 586 (7th Cir. 1989). Dismissal under Rule 12(b)(6) is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 519, 520-21 (1957). For the purposes of a 12(b)(6) motion, we accept as true all well-pleaded allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Generally, consideration of matters outside the pleadings is improper without conversion of a 12(b)(6) motion into a motion for summary judgment. *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). In this matter, all parties ask us to consider additional documents, not attached to the complaint, in deciding this motion. We decline to do so, as the documents we are asked to consider are related to plaintiff's claim, but not, as a contract might be, central to that claim. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661-62 (7th Cir. 2002) (discussing the "narrow exception" permitting, but not requiring, consideration of documents central to plaintiff's claim in a motion to dismiss.)

## B. Choice of Law

Before we can discuss the merits of either the Advisory Committee or Northern Trust's motions, we must first determine what law to apply in evaluating whether or not Foster Walker's complaint fails to state a claim. The parties dispute whether the

Ohio or Illinois statute of limitations applies to Foster Walker's claims of breach of fiduciary duty. A federal court must apply the choice-of-law rules of the state in which it sits - in this case, Illinois. *E.g. Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006). Illinois courts employ a two-pronged approach in determining which state's law to apply to a dispute concerning a trust. First, Illinois courts follow Restatement (Second) of Conflict of Laws concerning the choice of law to be applied in cases involving trusts. *Ford v. Newman*, 381 N.E.2d 392, 395 (Ill. App. Ct. 1978). Section 272 of the Restatement provides:

> The administration of an inter vivos trust of interests in movables is governed as to matters which can be controlled by the terms of the trust:
> (a) by the local law of the state designated by the settlor to govern the administration of the trust, or (b) if there is no such designation, by the local law of the state to which the administration of the trust is most substantially related.

Where a settlor does not expressly designate a state whose laws should apply, Illinois courts apply the law of the state with the "most significant contacts" to the litigation. *Id.* at 395. In Illinois, the performance of a trustee in the matter of administration of a trust is generally governed by the law of the situs - the place of performance of active duties of a trustee. *Central Standard Life Co. v. Gardner*, 161 N.E. 178, 187 (Ill. 1959).

The Trust Document does not expressly designate a state to govern administration of the trust, although it does reference Ohio law in two instances - first, in governing the distribution of assets in accordance with the Ohio intestacy law, and second, in specifying that instruments of conveyance be executed in accordance with Ohio property law. Even if another state's law is designated for specific purposes, if a grantor did not expressly designate a state whose law would govern for the purpose of administering the trust, Illinois courts have applied Illinois law where the trust corpus is in Illinois. *Brown v. Ryan*, 788 N.E. 2d 1183, 1188-89 (Ill. App. 2003); *Ford,*, 381 N.E. 2d at 395. As the Trust Agreement does not expressly state that Ohio law should apply to administration of the trust, and the Trust is located in Illinois, we follow the Illinois courts and apply Illinois law to questions concerning the administration of the Trust at issue here.

C.      Northern Trust's Motion to Dismiss

Northern Trust contends that Foster Walker's claims against it fail to state a claim for breach of fiduciary duty and are barred by Illinois' five-year statute of limitations for actions based upon a breach of fiduciary duty. Foster Walker's allegations against Northern Trust are as follows:

Count I: Northern Trust violated its fiduciary duty to Foster Walker by operating the trust at the direction of Foster, and with reckless indifference to Foster Walker, by

twice denying her requests for withdrawal of principal, and by denying her requests for distributions for her education and medical expenses;

Count II: Northern Trust violated its fiduciary duty to Foster Walker, Illinois law, and the Prudent Investor Act by failing to make either discretionary or mandatory income distributions, by using Trust income to pay federal and Delaware tax on Trust income and income from another trust, and by investing in growth rather than income, creating excessive fees for Northern Trust and denying income to Foster Walker;

Count III: Northern Trust violated its fiduciary duty to Foster Walker by paying attorneys' fees from Trust funds to itself, to members of the Advisory Committee and to Foster in the Delaware litigation;

Count IV: Northern Trust conspired and agreed with all other defendants to convert Trust funds by paying their attorneys' fees in the Delaware litigation;

Count X: Northern Trust breached its fiduciary duty when it acted in concert with Foster to coerce Foster Walker into signing the 1985 Waiver, and when it failed to provide Foster Walker with full information, including a copy of the Trust Document, at the time she signed the 1985 Waiver.

Count XI: Northern Trust should be discharged as trustee because there has been an "estrangement" between Foster Walker, the Advisory Committee defendants, and Northern Trust.

## 1. Breach of Fiduciary Duty in Administration of the Trust (Counts I and II)

In two separate counts, Foster Walker alleges that Northern Trust breached its fiduciary duty by failing to make discretionary or mandatory income distributions, investing Trust assets improperly, and misusing trust funds to pay taxes. Northern

Trust asserts that it had no fiduciary duty to Foster Walker beyond that of following the instructions of the Advisory Committee, and that so long as it obeyed the Advisory Committee and acted in good faith, it could not breach its fiduciary duty. In support of its contention, Northern Trust cites to provisions of the Trust Agreement providing that decisions with respect to distributions, investments, and the payment of taxes were all to be made by the Advisory Committee, and not by Northern Trust.

To state a claim for breach of fiduciary duty, a plaintiff must establish: 1) the existence of a fiduciary duty; 2) breach of that fiduciary duty; and 3) and that such breach proximately caused plaintiff's injuries. *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). Neither party contests that Northern Trust, as trustee, owes Foster Walker a fiduciary duty. *See, e.g., Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 829 N.E.2d 818, 828 (Ill.App. Ct. 2005)(holding that "the duties owed by a trustee to the beneficiaries of a trust are well-established. A trustee owes a fiduciary duty to the beneficiaries and is obligated to carry out the terms of the trust and to act with the highest degree of fidelity and utmost good faith.")

In Illinois, the four corners of the trust agreement establish the entirety of the trustee's powers. *Stuart v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 369 N.E.2d 1262, 1271 (Ill. 1977); *Rubinson v. Rubinson*, 620 N.E.2d 1271, 1279 (Ill. App. Ct. 1993) (noting that the express terms of a trust confine the trustee's powers); *Dunker*

- 16 -

*v. Reichman*, 841 F.2d 177, 180 (7th Cir. 1988). However, the trust agreement does not absolve a trustee of his general fiduciary obligations. *See Schwendener, Inc.*, 829 N.E. 2d at 828. It is premature for us to determine whether or not Northern Trust complied with the instructions of the Advisory Committee at all times, and whether or not its alleged bad faith means that even if it did comply with the instructions of the Advisory Committee, it still breached its fiduciary duties. Foster Walker has stated a cognizable claim in Counts I and II; the merits of the allegations are a matter for another day.

## 2. Breach of Fiduciary Duty in Payment of Attorneys' Fees (Counts III and IV)

Foster Walker next alleges that Northern Trust improperly reimbursed itself, the Advisory Committee defendants, and Foster for attorneys' fees incurred in the Delaware litigation. Northern Trust asserts that the counts pertaining to this actions be dismissed as a matter of law, because it paid those attorneys' fees in accordance with the Trust Agreement. Northern Trust is empowered, by the Trust Document, to make all provisions for defense of the trust (Trust Agreement, Article V(1), (n), (p)) and Illinois courts permit a trustee to be reimbursed for its expenses in defending the trust. *Rubinson*, 620 N.E.2d at 1281 (discussing the general rule that "a trustee found without fault is entitled to reimbursement from the trust for all expenses properly incurred in

administering and defending the trust" including attorneys' fees). Regardless of whether or not Northern Trust erred in paying attorneys' fees to itself and others when they were not expressly approved by the court, Foster Walker has clearly stated a claim that Northern Trust breached its fiduciary duty by paying itself and others excessive or unreasonable fees. She need not, as Northern Trust argues, bring a separate claim on this issue. Whether those fees were appropriate is a question of fact, not of law.

2.    **Action for Removal of Trustee (Counts XI and XI)**

In Count XI of her Complaint, Foster-Walker requests that Northern Trust be removed as trustee. She describes this cause of action as "estrangement." While "estrangement" is not a cause of action in Illinois, we will construe Foster-Walker's Count XI to be a claim for removal of a trustee, which appears to be how Foster-Walker has rephrased that cause of action in her response to Northern Trust's motion to dismiss. We will dismiss Count XI as duplicative of Count IX.

In Count IX, Foster Walker requests removal of the trustee. Removal of a trustee is justified in certain cases where there is breach of trust, misconduct or disregard of fiduciary duties. *E.g., Altschuler v. Chicago City Bank & Trust Co.*, 43 N.E.2d 673 (1942), *aff'd in part, rev'd in part on other grounds*, 44 N.E.2d 604 (1942). As a decision concerning the necessity of removal would require a determination of whether or not Northern Trust has breached any of its fiduciary duties, any

determination of the right of removal is premature. By alleging that Northern Trust has breached its fiduciary duties, improperly paid out funds from the Trust, Foster-Walker has sufficiently alleged facts, which if proven, may entitle her to the relief she requests.

3.    **Application of the Statute of Limitations to Bar all Claims**

Northern Trust argues that Foster Walker's claims arising out of acts committed before Sept. 11, 2006, are barred by the statute of limitations.[1] In Illinois, a five year statute of limitations applies to claims for breach of fiduciary duty. 735 ILCS 5/13-205; *Armstrong v. Guigler*, 673 N.E.2d 290, 292-97 (Ill. 1996). The 'discovery rule" provides that "a party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused." *Clay v. Kuhl*, 727 N.E.2d 217, 220 (Ill. 2000). Whether or not the discovery rule applies is generally considered a question of fact. *Id.* at 221. Furthermore, complaints may not be dismissed on motion pursuant to Fed. R. Civ. P. 12(b)(6) simply because the plaintiff has not pled in anticipation of the assertion of affirmative defenses. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Instead, a complaint

---

[1] We will not consider Northern Trust's argument, raised in its reply in support of its motion, that Foster Walker's claims are barred by the three year statute of limitations contained in 760 ILCS 5/11. This argument is based upon papers attached by Foster Walker to her response, which we have already stated we will not consider in a motion to dismiss. Furthermore, arguments first raised in a reply brief are generally not considered.

which otherwise states a claim may only be dismissed when "the plaintiff pleads itself out of court-that is, admits all the ingredients of an impenetrable defense." *Id.*

In this case, Foster-Walker complains of actions taken as early as 1985 and of a continuing conspiracy to prevent her from learning of her rights under the Trust Agreement and of the status of the Trust assets. Although she did not bring suit until Sept. 11, 2003, when she was 38 years old, Foster-Walker explains that Northern Trust's alleged deception in sending the 1985 Waiver to her father, instead of to her, as well as the alleged deception of Northern Trust in failing to respond to her inquiries, all prevented her from discovering Northern Trust's breaches of fiduciary duty. Taking her allegations as true, as we must, we find that Foster Walker has sufficiently alleged circumstances which, if true, could result in the application of the discovery rule and the tolling of the statute of limitations. Other than to note the difficult nature of proving the inability to discover the truth of the alleged deception given the substantial passage of time affording an opportunity to do so, the issue is one of fact rather than law.

Accordingly, Northern Trust's Motion to Dismiss is denied in its entirety.

### 3. The Advisory Committee Defendants' Motion to Dismiss

Our disposition of the Advisory Committee Defendants' Motion is largely determined by our resolution of legal issues with respect to Northern Trust. In her

complaint, Foster-Walker alleges the following against the Advisory Committee Defendants:

a) Count I - alleging bad faith, abuse of discretion, breach of fiduciary duty, and reckless indifference based upon the Advisory Committee Defendants' refusal to authorize discretionary distributions from the trust;

b) Count IV - conspiracy to convert trust funds and breach of fiduciary duty by authorizing payment of excessive attorneys' fees incurred in the Delaware litigation from the Trust;

c) Count V, VI, VII - unjust enrichment, conversion, breach of fiduciary duty, bad faith, and abuse of discretion, directed towards Phyllis Foster, Lawrence Foster, and Henry Mather, concerning the authorization of payment of attorneys' fees as incurred in the Delaware litigation;

d) Count IX and XI- seeking removal of the Advisory Committee;

e) Count X - creation of a constructive trust based upon the wrongful conduct of all defendants.

The Advisory Committee Defendants contend that Foster Walker's claims are time barred by the Ohio and Illinois statutes of limitation and by laches. In addition, they claim that as a matter of law, they did not violate their fiduciary duties because 1) they were entitled to reimbursement for their attorneys' fees, and 2) Foster was not reimbursed for his attorneys' fees. Finally, they claim that Foster Walker has not alleged facts sufficient to justify a claim for removal of the Advisory Committee.

1.    **Application of Statute of Limitations and Laches to all Counts**

We have already held that Illinois law applies to questions concerning fiduciary duties under the Trust. For the reasons explained above, we believe it is premature to apply the statute of limitations to bar Foster Walker's complaint. The Advisory Committee Defendants also assert that Foster-Walker's complaint is barred by the equitable doctrine of laches. Application of laches requires proof that Foster Walker unreasonably delayed in pursuing her claims. *Tully v. State*, 574 N.E.2d 659, 662 (Ill. 1991) (defining laches as "an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party.") As we explained in our previous discussion concerning the applicability of the statute of limitations, the reasonableness of Foster Walker's actions present questions of fact and may not be decided at this stage in the litigation.

2.    **Removal of the Advisory Committee (Counts IX and XI)**

As discussed above, Counts IX and XI seek removal of the trustee and the advisory committee. As Count XI is duplicative of Count IX, it is dismissed. As resolution of Count IX depends on resolution of the ultimate question of whether or not the Advisory Committee Defendants have breached their fiduciary duties, Count IX states a claim for which relief may be granted.

3. **Breach of Fiduciary Duty With Respect to Payment of Attorneys' Fees (Counts IV- VII)**

Foster Walker claims that the Advisory Committee Defendants breached their fiduciary duties when they authorized payment of excessive attorneys' fees in the Delaware litigation to themselves and to Foster. First, the Advisory Committee Defendants assert that as a matter of law, they had a right to reimbursement for their attorneys' fees. As discussed above in relation to Northern Trust's duty to pay attorneys' fees, even if the Advisory Committee Defendants had a right to these fees, questions of fact exist as to whether the amount was reasonable, and dismissal of these Counts in their entirety is premature. Second, the Advisory Committee Defendants assert that they did not breach their fiduciary duties by authorizing payment of attorneys' fees to Foster because Foster was not paid those fees. Whether or not Foster was paid attorneys' fees is indisputably a question of fact. We will not consider the Advisory Committee Defendants' request for partial summary judgment on the issue of whether or not fees were paid to Foster. Foster Walker has not had the opportunity to conduct discovery regarding whether or not fees were paid to Foster such that she could meaningfully respond to such a motion.

Finally, the Advisory Committee Defendants request that Robert Foster be dismissed from this litigation with respect to any counts concerning the payment of

attorneys' fees because Robert Foster was not a member of the Advisory Committee during the Delaware litigation. Again, as this is a question of fact, we cannot address it at this time.

Accordingly, the Advisory Committee defendants' motion to dismiss is denied in its entirety.

## CONCLUSION

For the foregoing reasons, Foster's motion to dismiss is granted in part and denied in part, and the motions to dismiss of the Advisory Committee and Northern Trust are denied.

_____
Charles P. Kocoras
United States District Judge

Dated: **JAN 1 8 2007**

- 24 -